# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 5255 | **DATE** | November 26, 2003 |
| **CASE TITLE** | Betty J. Dumas v Sentinel Mortgage Corp., et al | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Hearing
(5) ☐ Status hearing
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Memorandum opinion and order entered. Accordingly, defendant's motion for summary judgment is granted as to counts I and II. The Court declines to exercise supplemental judgment over count III, which plaintiff may be able to pursue in state court. Count III is dismissed without prejudice.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| X | Notices mailed by judge's staff. | DEC 0 2 2003 | |
| | Notified counsel by telephone. | date docketed | 31 |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| GDS | courtroom deputy's initials | 03 DEC -2 AM 4:44 U.S. DISTRICT COURT CLERK | date mailed notice |
| | | Date/time received in Central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BETTY J. DUMAS, )
)
      Plaintiff, )
)
                         )     No.   02 C 5255
v. )
)     Judge Robert W. Gettleman
SENTINEL MORTGAGE CORP., MARK R. )
CAHAN, and JEFF KLEANBERG, )
)
      Defendants. )

## MEMORANDUM OPINION AND ORDER

In a three count *pro se* complaint, plaintiff Betty J. Dumas ("Dumas") alleges that defendants Sentinel Mortgage Corporation ("Sentinel"), Mark R. Cahan ("Cahan"), and Jeff Kleanberg ("Kleanberg"), violated the Fair Housing Act 42 U.S.C. §§ 3601 *et seq.* (Count I), the Equal Credit Opportunity Act 15 U.S.C. §§ 1691 (Count II), and the Illinois Consumer Fraud and Deceptive Business Practices Act 815 ILCS § 505/2 (Count III) by first sending a solicitation for a loan and then refusing to grant her a loan because of her race. Defendants have moved for summary judgment on all three counts. For the reasons stated below, the court grants defendants' motion as to Counts I and II and declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over Count III.

## FACTS[1]

Plaintiff is an African-American woman who lives in Chicago, Illinois. Cahan is the founder and president of Sentinel, an Illinois corporation with its principal place of business in

---

[1] These facts are taken from the parties' Local Rule 56.1(a)(3) Statements of Material Facts and are undisputed unless otherwise noted.

Chicago, Illinois. Kleanberg was an employee and representative of Sentinel from May 2002 to June 2003.

Sentinel is a mortgage brokering business that does not lend money directly to consumers but rather connects lenders with qualified borrowers. As compensation, Sentinel receives a percentage of the total loan amount for any referral that results in a loan. Lenders with whom Sentinel contracts require a minimum loan amount of $20,000 to $50,000 to process a loan, depending on the particular lender. According to defendants, when a potential borrower requests a loan for less than $20,000, it is Sentinel's practice to inform the customer that $20,000 is the minimum loan, and if they are interested in a loan of at least $20,000 they come to Sentinel's office to complete a loan application. There is no evidence that Sentinel has approved loans for less than $20,000, but Sentinel admits it has approved loans for less than $50,000. In the regular course of its business, Sentinel maintains a log of all loans in which it acted as a broker. In 2001, 18 out of 53 loans in which Sentinel acted as a broker were to African-American borrowers (34%) and in 2002, 30 out of the 85 loans were to African-American borrowers (35%).

On or about May 17, 2002, Sentinel sent a mass mailing to all Cook County homeowners who were delinquent on their taxes. Dumas received one such letter that stated:

FINAL NOTICE.

Dear Homeowner,

    A recent review of **Cook County's Property Tax Files** showed your **1998 tax bill** unpaid and currently outstanding. **Penalties** and **interest** are accruing at over 18% each year until this bill is paid! Furthermore, if this tax bill is not paid you may **LOSE YOUR HOME!!!! THIS MAY BE YOUR LAST CHANCH[sic] TO REDEEM YOUR TAXES!!!**

> As an experienced Attorney and loan officer with over 10 years experience in the Chicago market, I may be able to help you by taking one of the following actions:
>
> 1) Lend money directly to you to payoff[sic] the above tax bill.
>
> 2) Refinance your current mortgage and payoff[sic] the delinquent tax bill.
>
> 3) Refinance your mortgage, pay your tax bill, and payoff[sic] other bills that have high interest rates.
>
> 4) ALSO-you may be able to borrow extra money for home improvements and debt consolidation . . .
>
> Sincerely,
>
> Mark R. Cahan.

(Emphasis in original).

In a substantially similar letter from Sentinel to Dumas on or about the same time, Sentinel's letter indicated that her unpaid balance was $700.

On or about July 18, 2002, Dumas called Sentinel in response to these letters and spoke to Cahan and Kleanberg about a loan of $10,000 to pay off her taxes. Cahan and Kleanberg informed Dumas of Sentinel's minimum loan amounts. Defendants contend that Kleanberg suggested that if she was interested in taking out a loan of $20,000 or more, she should come by Sentinel's office to complete an application. Plaintiff contends that Cahan and Kleanberg refused to take an application from Dumas for a loan of less than $50,000. In either case, there is no evidence that Dumas ever applied for a loan with Sentinel. After her home was sold for delinquent taxes, Dumas filed this three count complaint.

## LEGAL STANDARD

A moving party is entitled to summary judgment under Rule 56 when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Stewart v. McGinnis*, 5 F.3d 1031, 1033 (7th Cir. 1993), *cert. denied*, 510 U.S. 1121 (1994). Once the movant has met its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed.R.Civ.P. 56(e). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. *O'Connor v. DePaul University*, 123 F.3d 665, 669 (7th Cir. 1997).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Chicago Board of Education v. Substance, Inc.*, 2002 U.S. Dist. LEXIS 15036, at *6 (N.D. Ill. 2002). "The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient; there must be evidence in which a jury could reasonably find for the nonmoving party." *Anderson*, 477 U.S. at 252.

## DISCUSSION

Plaintiff argues that defendants did not allow her to apply for a loan of less than $50,000 because she was an African-American. Plaintiff also argues that defendants misrepresented that she could apply for a loan of less than $50,000 upon which she relied to her detriment.

4

In response, defendants argue that plaintiff is using the legal system to cure her perceived societal wrongs. Defendants also argue that plaintiff has failed to show any evidence of racial discrimination and that she failed to submit a completed application as required to state a claim under the Equal Credit Opportunity Act. Finally, defendants argue that plaintiff has failed to establish that defendants made a false or misleading statement, that defendants intended that she rely on any false or misleading statement, and alternatively, that she failed to suffer any damages as a result of such a reliance.

In Counts I and II, plaintiff alleges that defendant violated the Fair Housing Act, 42 U.S.C. §§ 3605 and the Equal Credit Opportunity Act 15 U.S.C. §§ 1691 by refusing her a loan because of her race. Section 3605(a) of the Fair Housing Act provides that:

> [i]t shall be unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin.

42 U.S.C. §§ 3605(a) (2000).

To establish a *prima facie* case of discrimination in lending in the Seventh Circuit, a plaintiff must show a reason for suspecting discrimination on a prohibited basis. *Latimore v. Citibank Fed. Sav. Bank*, 151 F.3d 712, 715 (7th Cir. 1998). This can be shown by: (1) providing evidence that two applicants, one Caucasian and one African-American, each submitted an application to a bank at the same time and met the bank's standard of creditworthiness, but only the Caucasian received the loan, or (2) otherwise providing sufficient direct or circumstantial evidence of discrimination to create a triable issue of fact. *Id.*

Section 1691(a)(1) of the Equal Credit Opportunity Act provides:

> [I]t shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction on the basis of race, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to contract).

15 U.S.C. § 1691(a)(1) (2000).

To establish a claim under the Equal Credit Opportunity Act, plaintiff must have actually submitted a completed application as defined by 12 C.F.R. § 202.2(f). *Howard Oaks, Inc. v. Maryland Nat'l Bank*, 810 F.Supp 674, 678 (D. Md. 1993). Section 202(f) provides that an,

> [A]pplication means an oral or written request for an extension of credit that is made in accordance with procedures used by a creditor for the type of credit requested. . . . A completed application means an application in connection with which a creditor has received all the information that the creditor regularly obtains and considers in evaluating applications for the amount and type of credit requested (including, but not limited to, credit reports, any additional information requested from the applicant, and any approvals or reports by governmental agencies or other persons that are necessary to guarantee, insure, or provide security for the credit or collateral).

12 C.F.R. § 202.2(f) (2003).

In support of its motion defendant has provided evidence that at least 34% of the loans in which Sentinel acted as a broker were to African-American borrowers in the year in which this dispute took place. Plaintiff, on the other hand, has presented no evidence to support her allegation. Although plaintiff is proceeding *pro se*, she has been provided notice pursuant to Local Rule 56.2 informing her that she cannot rest on her own self-serving statements. Plaintiff has provided no evidence to suggest that Sentinel discriminated against African-American borrowers, in general, on a prohibited basis, or that a Caucasian person with creditworthiness similar to her's sought to apply for and received a loan of less than $50,000 at the same time with

Sentinel. Plaintiff has provided no evidence that she was refused an application because of her race. Nor has plaintiff contradicted defendants' factual assertions that Sentinel has not discriminated against African-American borrowers. In the absence of any such evidence by plaintiff, the undisputed evidence reflects that Sentinel did not racially discriminate against African-Americans, in general, or her in particular. Accordingly, plaintiff has failed to raise genuine issues of fact as to whether Sentinel violated the Fair Housing Act or Equal Credit Opportunity Act, and Sentinel is entitled to summary judgment on these Counts.

Finally, in Count III, plaintiff charges Sentinel with fraud under Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/2 (2003). Having concluded that plaintiff has no federal claims, the court declines to exercise supplemental jurisdiction over Count III pursuant to 28 U.S.C. § 1367(c).

For the reasons set forth above, defendant's Motion for Summary Judgment is granted as to Counts I and II. The court declines to exercise supplemental jurisdiction over Count III, which plaintiff may be able to pursue in state court. Count III is dismissed without prejudice.

**ENTER:** **November 26, 2003**

Robert W. Gettleman
United States District Judge